**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**ANDRE TAPLIN**

**VERSUS**                          **CIVIL ACTION NO. 11-516-DLD**

**MICHAEL J. ASTRUE,**            **CONSENT CASE**
**COMMISSIONER OF SOCIAL**
**SECURITY**

## RULING

Plaintiff seeks judicial review of a final decision of the Commissioner denying his claim disability income benefits (DIB). In making that final decision, the Commissioner reached the fifth and final step of the five-step sequential disability analysis set forth in 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f),[1] finding that the plaintiff had a severe impairment of degenerative disc disease and degenerative joint disease but that these impairments, singularly or in combination, did not meet or medically equal a listing. The Commissioner also determined that the plaintiff was unable to perform his past relevant work as a post office mail handler, scaffold builder help, and forklift/puller, but had the residual functioning capacity[2] to perform the exertional requirements of light work with some limitations.

In reaching this decision, the ALJ considered the medical evidence, the testimony of the claimant, and the VE testimony in finding that plaintiff would be able to perform the requirements of representative occupations such as motel cleaner and mial clerk in an

---

[1] *See, e.g.*, *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

[2] Residual functional capacity ("RFC") is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), *citing* SSR 96-8p.

office setting. (TR 22-23) Applying the Medical-Vocational Rules as a guide and framework for decisionmaking, the Commissioner determined that significant jobs existed in the national economy which plaintiff could perform despite the limitations in his RFC; therefore, plaintiff was not disabled within the meaning of the Social Security Act. (TR 15-23)

**Background**

Plaintiff protectively filed for Title II disability insurance benefits ("DIB") on April 21, 2009, alleging a disability onset date of April 1, 2005, due to spinal stenosis, degenerative joint disease, "knees, ankles, and big toe/gout/hbp/cholesterol/hyperparathyroidism." (TR 126. Plaintiff's insured status was through December 31, 2009. This claim was denied initially, and after plaintiff filed a timely request for a hearing, the hearing subsequently was held on March 24, 2010, which resulted in an unfavorable decision on July 24, 2010. The plaintiff timely requested a review of this decision, and the Appeals Council denied the request for review on May 26, 2011, making the ALJ's decision the final decision of the Commissioner.

## *GOVERNING LAW*

In reviewing the Commissioner's decision to deny benefits, the Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *E.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute

its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. *Id.* Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id.* A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. *Id.*

However, the substantial evidence standard of review is not a mere rubber stamp for the Commissioner's decision, and it involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Court must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Id.*

To determine whether a disability exists for purposes of the Act, the Commissioner must weigh the following elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

At steps one through four of the five-step sequential analysis, the overall burden of proving disability under the Social Security Act rests on the claimant. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1985). The determination of a claimant's residual functional capacity ("RFC") between steps three[3] and four is exclusively reserved for the Commissioner rather

---

[3]Listing impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. At the third step, for a claimant to show that his impairment matches a Listing he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan*

than for the claimant's physicians. If a claimant proves that he no longer is able to work in his prior job, then the burden shifts to the Commissioner to show that there is some other type of substantial gainful activity that the claimant can perform. *Id.* Thus, in cases such as this one where the Commissioner determines that the claimant cannot perform his past relevant work and accordingly reaches the fifth step of the five-step disability sequential analysis,[4] the Commissioner bears the burden of establishing that there is other work in the economy that the claimant can perform. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). If the Commissioner adequately points to potential alternative employment, the ultimate burden of persuasion then returns to the claimant to prove his inability to perform those jobs. *Id.*; *Kraemer v. Sullivan*, 885 F.2d 206 (5th Cir. 1989).

## ISSUES

The issue before this Court is whether the Commissioner's finding that Andre Taplin is not disabled is supported by the substantial evidence and was reached by applying the proper legal standards. 42 U.S.C. § 405(g).

*Pro se* plaintiff argues for remand based on two statements of error:

1) That the ALJ improperly considered his subjective complaints of pain or improperly discounted his credibility; and

2) That the ALJ improperly weighed the opinion of his treating physician, giving more weight to a non-treating physician.

---

*v. Zebley*, 493 U.S. 521, 529–32, 110 S.Ct. 885, 891–92, 107 L.Ed.2d 967 (1990); 20 C.F.R. § 404.1525.

[4] The Commissioner uses a five-step sequential analysis to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir.2005); *Masterson v. Barnhart*, 309 F.3d 267,271-72 (5th Cir.2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir.2000). See, also, 20 C.F.R. § 404.1520.

(rec.doc. 14)

## DISCUSSION AND ANALYSIS

### Issue 1 - Consideration of subjective complaints & credibility

In the Fifth Circuit, allegations of pain must be corroborated by objective medical evidence. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991); *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). Also, it is the ALJ's duty to make affirmative findings regarding a plaintiff's subjective complaints when making a credibility determination. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994) (*citing Scharlow v. Schweiker*, 655 F.2d 645, 648- 49 (5th Cir.1981))"The ALJ must weight the objective medical evidence and assign articulated reasons for discrediting the claimant's subjective complaints." *Pineda v. Astrue*, 2008 WL 3341022 (5th Cir. 2008); *Falco,* at 163.

Further, the ALJ is not required to give subjective complaints precedence over the objective medical evidence. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985). Otherwise, every claimant would receive benefits and there would be no need for the determination process. To the contrary, a claimant's subjective complaints may be discounted by an ALJ if they are inconsistent with other evidence in the record. *Dunbar v. Barnhart*, 330 F. 3d, 670, 672 (5th Cir. 2003). An ALJ may find, from the medical evidence, that an applicant's complaints are not to be credited or are exaggerated, too. *Johnson, supra*, 767 F.2d at 182. In judging a claimant's credibility, the ALJ also can consider such things as the claimant's participation in daily activities and household chores, and the medications the claimant is taking. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Reyes v. Sullivan*, 915 F.2d 151, 154-55 (5th Cir. 1990).

A review of the ALJ's determination reflects that while the ALJ found that plaintiff's medically determinable impairments could "reasonably be expected to produce the alleged symptoms," the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (TR 22)

Plaintiff complains that the ALJ did not properly consider his allegations of "excruciating pain in" his "back, leg, feet and shoulder;" his allegations that the pain at night is so unbearable that he can only sleep for 3 to 4 hours at a time; his allegations that he has "chronic low back pain but there are often times" of "debilitating periods of low back pain" that "last anywhere from three days to weeks at a time;" or his allegations that his combination of impairments have a "very profound impact on" his "daily living." (rec.doc. 14) Plaintiff also testified that his legs swell by the end of the day; standing aggravates his knee pain, and sitting makes his back stiff. (TR 20)

In contrast to plaintiff's allegations of excruciating or debilitating pain, however, the record reflects that plaintiff also testified that he was able to take care of his personal needs, helps take care of his mother, and transports her to all of her doctor's appointments. Plaintiff stays with his mother three or four hours each day, shops for groceries three times a week, and can perform light housework such as folding clothes. He drives, can walk one-fourth mile before needing to stop, goes to the YMCA two days a week to exercise, and cooks complete meals each day. Plaintiff also testified that he visits with friends and relatives or visits with friends at his cousin's Daquiri Shop to play dominos. He plays cards and shoots pool occasionally, and uses a knee brace when walking and exercising. (TR 19-21).

The record reflects that, in addition to considering plaintiff's testimony, the ALJ also considered the relevant medical evidence in reaching his credibility determination. For example, the ALJ acknowledged that the plaintiff was treated by Dr. Richard Schissler of the VA Medical Clinic for "degenerative joint disease of the right ankle and bilateral knees, lumbar spine stenosis, lower back pain, bilateral plantar fascitis, and pes planus." (TR 18) The ALJ discussed the x-rays which showed mild degenerative joint disease in the right ankle and both knees, the ankle brace for gout flare-ups, and the fact that his feet misalignment was correctable by manipulation. (Id.) The ALJ also discussed the opinion of Dr. Johnson, the consultative examiner. Dr. Johnson reported that plaintiff stated he had two left knee surgeries in 1987 and 1998, and a right knee surgery in 2001. Dr. Johnson's examination in July, 2009, revealed a normal range of motion of upper and lower extremities with no joint tenderness or swelling, a normal gait and station, and a mild lumbar tenderness with minimal spasms and normal range of motion. (TR 19) The ALJ also discussed the August, 2009, examination report of plaintiff's VA orthopedist, Dr. Henry Beinert, who found that plaintiff was capable of holding a "non-lifting sedentary occupation" with an alternating sit and stand requirement. (TR 380, 19)[5]

Thus, it is clear that the ALJ properly considered the plaintiff's subjective complaints in the context of the objective medical evidence[6] and plaintiff's testimony regarding his activities of daily living. The ALJ's analysis of the objective evidence as it related to

---

[5] The ALJ also discussed the opinion of Dr. Schissler, who determined in June, 2010, that plaintiff was "unemployable in any capacity." (TR 183)

[6] The law in the Fifth Circuit is that while an ALJ must consider a claimant's subjective complaints, he is allowed to examine the objective medical evidence to test the claimant's credibility. *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

plaintiff's complaints underscored his determination of plaintiff's credibility as intended under applicable rulings and regulations. The countervailing evidence in the medical records, which is at odds with plaintiff's testimony regarding the severity and frequency of his pain and limitations, provides sufficient evidence to support the ALJ's credibility determination regarding plaintiff's complaints, and the ALJ adequately explained his reasons for discounting plaintiff's subjective complaints about his symptoms. *Falco*, at 164. Plaintiff's arguments are without merit.

*Issue 2 - Treating Physician Rule*

The governing law in the Fifth Circuit is that the opinions, diagnoses, and medical evidence of treating physicians who are familiar with a plaintiff's condition should be accorded considerable weight in determining disability. *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). An ALJ may give less weight to a treating physician's opinion only when there is good cause shown to the contrary. Id. Good cause includes instances where the physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or otherwise unsupported by the record. *Hospital Service District No. 1 Of The Parish Of LaFourche v. Thompson*, 2004 WL 192047, *3 (E.D. La. Aug. 25, 2004). Also, the general rule is that a treating physician's opinion on the nature and severity of a claimant's impairments will be given "controlling weight" only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If the treating physician's opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic tests or otherwise unsupported by the evidence, the ALJ has good cause for discounting the treating physician's opinion in favor

of other experts, not giving the opinion considerable weight. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001), *Newton*, 209 F. 3d at 456 (*citing Brown v. Apfel*, 192 F.3d 492,500 (5th Cir. 1999).

Also, the regulations and circuit law are clear that while it is within the ALJ's discretion to assign greater or lesser weight to the medical evidence, it is not within his discretion to reject the opinion of a treating physician without a detailed analysis[7] of the treating physician's view. 1920 C.F.R. § 404.1527(d)(2), SSR 96-2p. See also, *Reynolds v. Astrue*, 2010 WL 583918, at *7 (N.D. Miss. 2010). However, that detailed analysis is only required in the absence of competing first-hand medical evidence. *Newton*, at 456-458.

Plaintiff complains that the ALJ gave greater weight to the consultative examiner's opinion, and he argues that the consultative examiner gave him an inadequate examination. Other than this conclusory statement, however, plaintiff points to no evidence that the examination was inadequate. Plaintiff argues that while Dr. Johnson found mild spasms, he suffers from substantial spasms, and that his range of motion was limited, not normal. Plaintiff further argues that Dr. Schissler's opinion that he was unemployable was a medical decision and should have been given greater weight than Dr. Johnson's opinion.

However, the Commissioner is not bound by a treating physician's conclusion that the claimant is disabled, as the question of whether an individual is disabled for purposes of the Social Security Act is a matter that can be determined only by the Commissioner. *Carry v. Heckler*, 750 F. 2d 479, 484 n.13 (5th Cir. 1985); *Barajas v. Heckler*, 738 F.2d 641,

---

[7]4"Detailed analysis" refers to the six factors set forth in § 404.1527(e) and explicitly applies only to medical opinions, not disability opinions, as those opinions are reserved for the Commissioner. *See Frank v. Barnhart*, 326 F. 3d 618 (5th Cir. 2003).

645 ( 5th Cir. 1984). Further, the Commissioner acts well within his discretion when he discounts an opinion of a treating physician that is only conclusory in nature without any supporting clinical or laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 621 ( 5th Cir. 1983); *Oldham v. Schweiker*, 660 F. 2d 1078, 1084 (5th Cir. 1981). In the final analysis, conflicts in the medical evidence are to be resolved by the Commissioner, not by the courts. *E.g.,Oldham*, 660 F.2d at 1084.

Here, the opinion of Dr. Schissler to which plaintiff refers is a report in June 2010, where Dr. Schissler stated that plaintiff was unemployable. There are three problems with this report: 1) it is outside the relevant time period; and 2) it contradicts Dr. Schissler's later report, the consultative examiner's report, and the orthopedist's report; and 3) it is a conclusory statement without supporting clinical or laboratory findings.

The relevant time period for disability income benefits is from the date of onset, April 1, 2005, to the date last insured, December 31, 2009. As plaintiff's insured status expired on December 31, 2009, plaintiff had to establish disability before or on that date. Dr. Schissler's June, 2010, report, while it may be indicative of the deterioration of plaintiff's condition, does not relate to the relevant time period. Moreover, the record evidence indicates that Dr. Schissler later opined in August, 2010, that plaintiff was limited to "nonlifting sedentary work as long as he can change position every 15 minutes . . . and avoiding walking more than 2 blocks." (TR 182) This later opinion is consistent with the opinion of the orthopedist. Further, the court notes that the RFC assigned by the ALJ is consistent with the limitations suggested in the orthopedist's opinion, not the consultative examiner's opinion. Finally, neither plaintiff nor Dr. Schissler point to any clinical or laboratory finding that supports the opinion that plaintiff is unemployable. In the final

analysis, it is the Commissioner who determines whether or not plaintiff is disabled, and good cause thus has been shown for the exception to the general "substantial weight" rule in the Fifth Circuit, as there is substantial evidence to support the ALJ's decision regarding the evidentiary weight assigned to Dr. Schissler's opinion.

Based on a review of the record and considering that the ALJ is afforded considerable deference in making credibility determinations, the court finds that the ALJ's decision that the claimant was not disabled under the applicable law and regulations should be upheld. Although the ALJ did not reach a result that was favorable to the plaintiff, his determination was well reasoned and supported by the substantial evidence in the record and was reached using the proper legal standard.

## **CONCLUSION**

Accordingly, for the reasons assigned, the decision of the Commissioner denying DIB benefits will be affirmed, and the complaint of Andre Taplin will be **DISMISSED**, with prejudice.

Signed in Baton Rouge, Louisiana, on September 14, 2012.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ANDRE TAPLIN

VERSUS                                                  CIVIL ACTION NO. 11-516-DLD

MICHAEL J. ASTRUE, COMMISSIONER      CONSENT CASE
OF SOCIAL SECURITY

## FINAL JUDGMENT

In accordance with written reasons assigned this date,

**IT IS ORDERED, ADJUDGED AND DECREED** that the decision of the Commissioner denying benefits shall be and hereby is **AFFIRMED** and that plaintiff's complaint hereby is **DISMISSED**, with prejudice.

Signed in Baton Rouge, Louisiana, on September 14, 2012.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**